UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 5: 14-074-DCR |
| ) | |
| V. ) | |
| ) | |
| KATHERINE MICHELLE JONES, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant. ) | |

*** *** *** ***

The United States Magistrate Judge assigned to this matter has determined that there is probable cause to believe that the Defendant has violated the conditions of her supervised release by using controlled substances illegally. [Record Nos. 407, 412] Before the final hearing on the matter, the Defendant moved the Court for discovery [Record No. 416] and also moved the Court for issuance of a subpoena. [Record No. 420] These motions were referred to United States Magistrate Judge Robert Wier for resolution. [Record No. 418]

The Defendant's alleged supervised release violation is based on readings from a sweatpatch that she was required to wear and as directed by her supervising United States Probation Officer. Jones wore the sweatpatch from November 18, 2016, until November 28, 2016. [Record No. 431, p. 2] The sweatpatch was then sent to Clinical Reference Laboratory for analysis where it ultimately tested positive for the illegal use of controlled substances. [*Id*.] The Defendant disputes the accuracy of this test and offers negative drug tests administered by her doctor's office and by the Montgomery County Detention Center. [*Id*.] Jones has filed

motions requesting discovery of information that she intends to use to challenge the reliability of the sweatpatch result. [Record Nos. 416, 420]

On January 20, 2017, United States Magistrate Judge Wier issued a Memorandum Opinion and Order denying both of the Defendant's motions. [Record No. 426] Jones has filed objections to the Magistrate Judge's ruling. [Record No. 431] Additionally, she has filed a motion seeking to have the sweatpatch re-tested. [Record No. 432] For the reasons outlined below, the Defendant's objections will be overruled and her motion will be denied.

## I.

The standard of review depends on whether the motion addressed by the Magistrate Judge is dispositive or non-dispositive. 28 U.S.C. § 636(b)(1). For non-dispositive motions, the Court reviews for clear error. 28 U.S.C. § 636(b)(1)(A). For dispositive motions, the Magistrate Judges ruling is reviewed *de novo*. 28 U.S.C. § 636(b)(1)(B). Dispositive motions that are reviewed *de novo*, include, *inter alia*, motions for injunctive relief, motions to dismiss or quash an indictment, and motions to suppress evidence. *Id*. All non-dispositive motions that are not included in this list are reviewed for clear error. Here, the pre-hearing discovery motions are not listed in the provision, nor do they otherwise qualify as dispositive motions. As a result, the Magistrate Judge's Memorandum Opinion and Order will be reviewed for clear error.

## II.

The Defendant requests that the United States "produce and/or make available for inspection and/or copying two categories of documents/other information":

> 1. All data, reports, protocols, lab notes, memoranda etc. concerning all tests reported to have been conducted by Clinical Reference Laboratory as reported in the Supervised Release Revocation Report and any others conducted in regard

> to defendant. If any of the documents were created by computer or have been computerized since creation, it is requested that a properties file print-out be produced as well.
>
> 2. All data, reports, memoranda, documents etc. concerning any problems and/or issues with the Pharmchek sweatpatch applied to defendant. This request is most specifically directed at problems or issues with the sweatpatch generating false positives and with contamination of the sweatpatch.

[Record No. 416]

The Magistrate Judge concluded that the Defendant was not entitled to this information. He first noted that defendants do not have the same rights to discovery in supervised release violation hearings as they do in trials. He reasoned that defendants are entitled to discovery of the evidence that will be presented against them, but that it did not appear that any further discovery is appropriate. Additionally, because the United States is not in possession of information relating to the Clinical Reference Laboratory's tests or the Pharmchek sweatpatch, it cannot then be compelled to produce that information under Rule 16 of the Federal Rules of Criminal Procedure. However, even if the information were in the government's possession, the Magistrate Judge concluded that the United States would not be required to provide it. Under Rule 32.1, the Defendant is only entitled to information that the United States intends to present at the hearing. And because the United States does not intend to present the requested information, the Defendant is not entitled to receive it. Additionally, under Rule 16, the Defendant is only entitled to discovery of evidence specifically mentioned by the rule. Because the requested evidence is not specifically mentioned, the Defendant is not entitled to production of it under Rule 16.

The Magistrate Judge's conclusions are not clearly erroneous. A defendant's rights in a supervised release revocation hearing are defined in Federal Rule of Criminal Procedure 32.1, which states that the defendant is entitled to:

> (A) written notice of the alleged violation;
>
> (B) disclosure of the evidence against the person;
>
> (C) an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear;
>
> (D) notice of the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel; and
>
> (E) an opportunity to make a statement and present any information in mitigation.

28 U.S.C. § 32.1(b)(2).

In *United States v. Johnson*, 356 Fed. Appx. 785 (6th Cir. 2009), the Sixth Circuit considered a defendant's access to discovery based on the right to present mitigating information under Rule 32.1(b)(2)(E). The defendant had filed a motion asking the court to direct the probation office to produce the defendant's file so that it could be examined for mitigating evidence. The Sixth Circuit concluded that the district court was not required to grant the defendant access to this information under Rule 32.1, noting that the defendant had failed to demonstrate that the requested discovery "was likely to uncover mitigating evidence material to his case . . . ." *Id*. at 789. The court stated that, if the defendant had been able to demonstrate that he was likely to uncover mitigating evidence, this would have "requir[ed] the conclusion that the district court abused its discretion in denying the motion." *Id*.[1] While

---

[1] The Sixth Circuit also seemed to reject a rule that would limit a defendant's discovery right to only the evidence that the government intended to present. The court noted that, in

defendants are entitled to "a hearing-based right to present mitigating evidence," the Sixth Circuit clarified that defendants are not entitled to "an unrestricted right of pre-hearing discovery." *Id*. Accordingly, the defendant was not entitled to review the file "for unidentified and entirely speculative information." *Id*.

This case suggests that a defendant in a supervised release revocation hearing does have a limited right to discovery, but only if the defendant is able to demonstrate that the requested evidence will likely uncover mitigating evidence material to the case. Here, the Defendant has specified the information that she wishes to obtain. However, this information is "entirely speculative information" that is not discoverable before a supervised release violation hearing. The Defendant has failed to demonstrate any likelihood that this voluminous requested discovery will produce mitigating evidence. Instead, the request is akin to a "fishing expedition," the utility of which is uncertain at best. Granting the Defendant's request would amount to granting an "unrestricted right of pre-hearing discovery," which the Sixth Circuit has made clear is not appropriate in the supervised release violation hearing context. Accordingly, the Defendant is not entitled to the requested information under Rule 32.1.[2]

---

*United States v. Guardino*, 972 F.2d 692 (6th Cir. 1992), the Sixth Circuit had "noted in dicta" that the version of Rule 32.1 that was in effect at the time only required the government to disclose evidence that it intended to use against the defendant. However, the *Johnson* court stated that the *Guardino* interpretation of Rule 32.1 "was dicta and is not controlling." It further noted that the *Johnson* also was distinguishable because it did not address the provision that grants defendants the opportunity to present mitigating information. Based on this discussion, it appears that the Sixth Circuit does not limit discovery to only the information that the government will present at the hearing and instead intended to permit discovery of mitigating information.

[2]   Assuming arguendo that Rule 16 of the Federal Rules of Criminal Procedure applies, it does not entitle the Defendant to the discovery that she seeks. As the Magistrate Judge stated, this rule does not entitle the Defendant to discover the requested information because the information is not within the government's custody or control and is not otherwise identified

### III.

The Defendant also seeks to subpoena information from PharmChem, Inc., the Food and Drug Administration, and Clinical Reference Laboratory. [Record No. 420] She requests that these entities "produce all data, reports, internal studies etc. concerning the following issues with the Pharmchek sweatpatch: (a) false positive test results; and/or (b) contamination of the sweatpatch during its application period, following removal and during testing." [*Id.*] Jones stated that the request is justified because she is able to produce two third-party drug tests that were administered during the period that she wore the sweatpatch. Because these tests produced negative results, Jones claims that they cast doubt upon the sweatpatch's result.

The Magistrate Judge concluded that the Defendant's request for subpoenas is not justified under the Federal Rules of Criminal Procedure. [Record No. 426, p. 7] He noted that the requested discovery is a "generalized fishing expedition" and that the Defendant failed to demonstrate that the documents were relevant or necessary to her preparation for the hearing. [*Id.*] Additionally, he found that the private drug testing results did not cast doubt on the Pharmchek sweatpatch result because "[t]he chronology easily supports the potential that Jones used sufficiently prior to or sufficiently after" the dates that these tests were administered. [*Id.* at 8] However, the Magistrate Judge noted that a subpoena to Clinical Reference Laboratory would be appropriate regarding test results and lab documentation relating to her specific sample, and has since granted that subpoena. [Record No. 428]

The Magistrate Judge did not clearly err in denying the broad-based subpoena requested by Jones' attorney. A criminal defendant may obtain a subpoena under Rule 17(c) to obtain

---

as discoverable in Rule 16. Fed. R. Crim. P. 16(a)(1)(F); *United States v. Presser*, 844 F.2d 1275, 1284-85 (6th Cir. 1988).

documents if: "(1) the items are evidentiary and relevant; (2) the items are not otherwise procurable through due diligence prior to trial; (3) the party cannot properly prepare for trial without such pre-trial production and inspection; and (4) the application is made in good faith and is not a fishing expedition." *United States v. Vassar*, 346 Fed. Appx. 17, 24 (6th Cir. 2009). Subpoenas "are not intended to provide a means of discovery for criminal cases" and a district court may limit the use of subpoenas where necessary to prevent a defendant "from embarking upon a costly and time-consuming fishing expedition . . . ." *Id.*

As was true of the Defendant's other request for discovery, the requested information is voluminous and the Defendant has provided little reason to believe that it will reveal information that is material for the hearing. The Magistrate Judge properly characterized this extensive and speculative request as a "fishing expedition." Because the Defendant has not demonstrated the relevance or necessity of the requested documents, it was appropriate for the Magistrate Judge to deny the request for the subpoenas.

**IV.**

The Defendant has also filed a motion requesting a retest of the sweatpatch that tested positive and is the basis for the potential finding of a supervised release violation. [Record No. 432] She argues that Rule 32.1 and the due process clause require that her request be granted. [*Id.*] Specifically, Jones argues that her due process rights entitle her to a right of confrontation, and that her right of confrontation entitles her to challenge the sweatpatch results through a retest. [Record No. 421, Ex. 1, pp. 4-11][3]

---

[3] The substance of the Defendant's argument regarding the sweatpatch is made in her objections to the Magistrate Judge's ruling.

Supervised release revocation proceedings "are subject only to 'minimum requirements of due process,' which are less demanding than the procedural protections that normally accompany criminal trials." *United States v. Kokoski*, 435 Fed. Appx. 472, 474 (6th Cir. 2011) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)). Due process requires those "minimum procedural protections" that are necessary "to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *United States v. Jackson*, 422 Fed. Appx. 408, 410 (6th Cir. 2011) (internal quotation marks and citation omitted). The defendant's due process rights include "a presumptive right to confront any adverse witness," unless the district court finds "good cause" to deny the confrontation right. *Id.* at 411.

In determining whether there is good cause to deny the confrontation right, courts are to consider five factors (the final two of which pertain to whether there is good cause to deny the confrontation right): "(1) the importance of the evidence to the court's finding, (2) the defendant's opportunity to refute the evidence, (3) the consequences of the court's findings, (4) the difficulty and expense of procuring witnesses, and (5) the traditional indicia of reliability borne by the evidence." *United States v. Torrez*, 132 F.3d 34 (6th Cir. 1997) (citing *United States v. Martin*, 984 F.2d 308, 311-12 (9th Cir. 1993).

The defendant cites *Martin*, where the district court had admitted a urinalysis sample based only on the testimony of a government agent who was involved only in the packaging and shipment of the sample and no other testimony. *Martin*, 984 F.2d at 314. The defendant's attorney requested that the court permit counsel to arrange for independent retesting of the samples, but the court denied the request. *Id.* The Ninth Circuit considered the stated factors and concluded that the district court violated the defendant's confrontation rights by admitting

the sample without a live witness to testify and without permitting the defendant to retest the sample. *Id.*

The court noted that, "[t]he more significant particular evidence is to a finding, the more important it is that the releasee be given an opportunity to demonstrate that the proffered evidence does not reflect 'verified fact.'" *Martin*, 984 F.2d at 311. It concluded that the defendant had a strong interest in refuting the laboratory results because the "results were uniquely important to the court's finding that [the defendant] possessed a controlled substance" as this evidence was heavily relied upon by the district court. *Id.* Additionally, "the government presented no other evidence of cocaine use, much less possession." *Id.*

Further, the defendant had "virtually no opportunity to refute the test results," and the "nearly complete denial of *any* confrontation" weighed in favor of granting relief. *Id.* The court then noted that if the defendant "had been given some opportunity—even if not the traditional opportunity to cross-examine a live witness—to refute this important evidence, then that opportunity could be considered in partial mitigation to his right of opportunity." *Id.* at 311-12. However, the defendant was only given the opportunity to cross-examine the government agent who handled the packaging and shipment of the sample but had no knowledge of how the sample was handled once the lab received it. *Id.* at 312. Additionally, the court denied the defendant the opportunity to re-test the samples independently, "which would have allowed him to impeach more directly the positive laboratory results." *Id.* As a result, the defendant was denied "all but the most cursory opportunity to refute the evidence" that supported the court's determination of a supervised release violation. *Id.*

Regarding the third factor, the court observed that the finding that the defendant possessed a controlled substance triggered application of a statutory mandatory minimum and

required a much higher term of imprisonment.  *Id*.  As a result, the consequences were significant.  *Id*.  The court next concluded that the difficulty and expense of obtaining a live witness for the defendant to cross-examine carried "little weight . . . because the government provided absolutely no substitute for live testimony." *Id*. at 313.  While bringing a live witness from the testing company may have resulted in great expense, the government provided no substitute and did not provide independent retesting of the specimen.  *Id*.  Because the government did not provide a less expensive alternative, "the expense or difficulty of procuring witnesses carrie[d] no weight" in determining whether there was good cause to deny cross-examination of a live witness.  *Id*.

For the fifth factor, the court did recognize that there was an indicia of reliability relating to the company's testing, since it is the company's business to conduct the tests.  *Id*. at 314.  However, it accorded this factor little weight "because the government presented negligible information about [the company's] experience or qualifications . . . ." *Id*. at 314.

After applying these factors to the present case, there is good cause to deny the defendant's right to confrontation regarding the sweatpatch sample.  Like the defendant in *Martin*, Jones has a significant interest in refuting the sample results.  However, she will be given other opportunity to refute those results.  She has been granted discovery of all documentation relating to her specific sample and also will be permitted to present evidence regarding her sobriety through the independent drug testing that she obtained.  Therefore, while admitting the sample may have severe consequences, Jones will not be completely denied confrontation in the same way as was the case in *Martin*.

Additionally, the "good cause" factors way in favor of the government here.  In *Martin*, the defendant offered to obtain independent retesting of the sample but the court refused to

grant this request. Here, the defendant is asking the government to obtain the sample, which would result in additional expense to the government. Further, as the court noted in *Martin*, there is an indicia of reliability regarding the accuracy of this test since this company is in the business of conducting these tests and the government relies on them regularly. Indeed, there is no reason to think that the test in this case is not reliable. Based on these factors, there is good cause to deny the defendant's request for confrontation in the form of the retesting of the sample.[4]

V.

For the foregoing reasons, it is hereby

**ORDERED** as follows:

1. The Defendant's objections to the Magistrate Judge's ruling [Record No. 431] are **OVERRULED**.

2. The Defendant's motion to retest the sweatpatch [Record No. 432] is **DENIED**.

This 2nd day of February, 2017.



Signed By:
*Danny C. Reeves*
United States District Judge

---

[4] The other two cases that the Defendant relies on, *United States v. Pierre*, 47 F.3d 241 (7th Cir. 1995) and *United States v. McCormick*, 54 F.3d 214 (5th Cir. 1995), do not compel a different conclusion. In these cases, the courts suggested that the defendant could have attempted to refute the lab result by obtaining independent testing or records relating to the reliability of the testing, but did not hold that the defendant is entitled to discovery of this information.